Shauck, J.
Counsel seem to agree that whether the Cincinnati Hospital was originally a state or a municipal institution it is now, by virtue of numerous legislative enactments, an institution of the" city. If its character is now municipal, as it appears to be, the act of April 29, 1902, is not within the condemnation of Wasson v. The Commissioners, 49 Ohio St., 622, and Hubbard, Treasurer, v. Fitzsimmons, 57 Ohio St., 436, which determine that an institution of the state for the accomplishment of its general purposes must be established and supported out of its general revenues, such purposes not authorizing a local imposition.
Regarding the hospital as a municipal institution, the act referred to is said to be repugnant to the first section of the thirteenth article of the constitution which ordains that “The general assembly shall pass no special act conferring corporate powers.” No artifice is employed to limit the operation of this act to Cincinnati by a description or classification from *445 which all other municipalities of the.state are excluded. Its operation is expressly limited to Cincinnati, and its special character is not disputed. We do not find in the brief of counsel for the defendants in error any attempt to give a definition of the phrase “corporate powers” which would not include some of the powers which were sought to be conferred by this act, nor any exposition of the subject which would lead to the conclusion that this act is valid if the words of this provision of the constitution are used in their ordinary sense. So far, therefore, as principles are concerned, we have the plain provisions of the fifth section of this act to authorize the issuance of bonds in the sum of $500,000, and the levying of a tax upon the property of the people of Cincinnati to pay those bonds with accruing interest; and the subject may be disposed of by the proposition, obviously sound and incontestably established by repeated decisions, that the power of taxation when conferred upon a municipality is “corporate power.” Among such decisions are the State ex rel. v. City of Cincinnati, 20 Ohio St., 18; State v. Pugh, 43 Ohio St., 98; Railway Company v. Martin. Treasurer, 53 Ohio St., 386.
But the insistence of counsel is, rather, that former decisions of this court require the conclusion that the act under consideration should be permitted to operate as though it were reconcilable with the constitutional limitation quoted. The first of the cases cited is The State ex rel. v. Davis et al., 23 Ohio St., 434. The legislation there considered provided for the regulation and management of the hospital whose improvement and enlargement are contemplated by the present act. Upon examination of the brief of counsel for the state in that case- *446 it appears that it was not thought that the power of taxation was conferred by the act whose validity was there challenged. It provided for the management and operation of an institution which had been erected with funds raised by taxation under favor of earlier enactments. In the opinion the court expressly excluded from its consideration the validity of the act by which that taxation had beén authorized. Since the court did not then decide the point which is most conspicuous in the present case we have no occasion for comment upon those which it did decide.
Counsel also cite the opinion of this court in the City of Cincinnati v. Taft et al., 63 Ohio St., 141. Brief as is that opinion it is much too long, and it far exceeds the requirements of the case in which it was written, if it encourages belief in the validity of an act of the character of this. Nothing was there decided except that there may, by special act, be conferred upon the city authority for the renewal and-ultimate payment of its bonds which are valid because purchased by the holder in reliance upon the decision of this court affirming the authority to issue them. To that precise point the syllabus is limited. Much care was bestowed on the opinion for the purpose of excluding the inference that the doctrine of the case might be extended to special acts for the creation of a new indebtedness to be discharged by additional municipal taxation.
Counsel for the defendants in error further insist that a conclusion favorable to the validity of this act results from the application of the doctrine of Platt, a taxpayer, etc., v. Craig et al.; and Jones, Mayor, v. The State of Ohio ex rel., 66 Ohio St., 75, it being assumed that in the view there taken a local and temporary emergency may arise in a municipality *447 to meet which the general assembly may by special act confer corporate power. To make the doctrine thus imputed to that case available in this the answer was filed alleging the existence of such local and temporary emergency. A sufficient answer to this contention'is that such doctrine is not decided in nor encouraged by the case cited. The second proposition of the syllabus and all the observations in the opinion have express reference to Sec. 26 of Art. 2 of the constitution. It was obvious not only to the member of the court who wrote the opinion in that case, but to all of us, that the unconditional terms of the inhibition against special acts conferring corporate power would not admit of any exception. Furthermore, we were well aware that in the constitutional convention it was proposed to amend Sec. 1 of Art. 13, by adding to the words “The general assembly shall pass no special act conferring corporate powers” the following qualification: “except for municipal purposes and where in their judgment the objects can be better attained than, under the general law.” The defeat of the proposition to amend and the submission and adoption of the unqualified inhibition are suggestive. It adds to that suggestiveness to observe in the debates that the proposed amendment was defeated because its adoption would admit the omnipotence of the general assembly and continue the former evils from which an escape was much desired, and that this would necessarily result because the submission to the judgment of the general assembly of the necessity for a special act would relieve the courts of the duty of declaring any such acts void. The amendment having failed, adjudications upon this subject should not proceed as though it had been adopted.
*448 The intervention of a' board of trustees with authority to issue the bonds to raise the funds required for the contemplated extension of the hospital, and ' to levy or cause to be levied a tax upon all the taxable property of the city for their redemption, cannot be regarded as relieving the act from the inhibition of this provision of the constitution. The inhibition is against the granting of corporate power by a special act and the name under which the donees of the power may be designated cannot be material. The act contemplates that the trustees shall be the agents of the city, vested with authority to exercise the power of taxation with respect to all the taxable property within its limits. The trustees are without individual interest in the hospital or in the purpose to be accomplished. To regard them as vested by the act with a corporate character distinct from that of the city whose powers they are to exercise would relieve the act of none of the objections urged against it since in, that view, the act would create a new corporation or confer the power upon an existing corporation, and these are ends wdiich cannot be reached by a special act. This question wras determined in accordance wdth these view^s by the unanimous decision of this court in Railway Company v. Martin, Treasurer, 53 Ohio St., 386.
It is not necessary to determine the soundness of the proposition urged by counsel for tlie plaintiff in error that the act is also repugnant to the 26th section of the second article of the constitution, wdiich ordains that “All laws of a general nature shall have a uniform operation. throughout the state,” but there is propriety in adverting to that section in connection with the section already considered. They were in their combined effect admirably adapted to cure the *449 legislative evils which resulted from the énactment of many laws which challenged the interest of a single representative, or representatives of a single county, but secured the votes of a majority in consideration of a return of the supposed favor. They were adopted to the end that the state should be governed by a system of laws to be passed by a majority of the legislative votes all of which should be prompted by approving opinions. The words of Ranhey, J., in Atkinson v. Railroad Co., 15 Ohio St., 21, concisely state the evil and the remedy:
“Constitutional provisions would be of little value if they could be evaded by a mere change of forms. These provisions of the constitution are too explicit to admit of the least doubt, that they were intended to disable the general assembly from either creating corporations, or conferring upon them corporate powers, by special acts of legislation. It was intended to correct an existing evil, and to inaugurate the policy of placing all corporations of the same kind upon a perfect equality as to all future grants of power; of making such laws applicable to all parts of the state, and thereby securing the vigilance and attention of its whole representation; and finally, of making all judicial constructions of their powers, or the restrictions imposed upon them, equally applicable to all corporations of the same class. We must give such a construction to the constitution, as will preserve its great leading objects intact; and we now proceed to inquire, whether this enactment can stand consistently with the full and just effect of these provisions.”
It was never possible that legislation so enacted should represent the combined'wisdom of the senators *450 and representatives. It is now an offense against the constitution.
The struggle for legislative supremacy over constitutional limitations should have ended a century ago. Formerly there was openly asserted a doctrine which, if sound, would give validity to legislation of this character against such constitutional limitations upon legislative power as we are considering, viz.: that constitutional limitations upon the exercise of legislative power are but admonitions to the legislative department without efficacy to annul enactments inconsistent with them. In 1803 that doctrine was completely overthrown by an authority which no one has challenged from that day to this, and upon reasoning so conclusive that it has evoked the universal approval and admiration of generations of students of constitutional law:
“The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written. To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if-those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation. It is a proposition too plain to be contested, that the constitution controls any legislative act repugnant to it; or, that the legislature may alter the constitution by an ordinary act. Between these alternatives there is no middle ground. The constitution is either a superior paramount law, unchangeable by ordinary .means, or it is on a level with (ordinary legislative acts, and, like other acts, *451 is alterable when the legislature shall please to alter it. If the former part of the alternative be true, then a legislative act contrary to the constitution is not law; if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable. Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and, consequently, the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void. This theory is essentially attached to a written constitution, and, is consequently, to be considered, by this court, as one of. the fundamental principles of our society. It is not therefore to be lost sight of in the further consideration of this subject.
“If an act of the legislature, repugnant to the constitution, is void, does it, notwithstanding its invalidity, bind the courts, and oblige them to give it effect? Or, in other words, though it be not law, does it constitute a rule as operative as if it was a law? This would be to overthrow in fact Avhat was established in theory; and would seem, at first view, an absurdity too gross to be insisted on. It shall, however, receive a more attentive consideration. It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If tAvo laws conflict with each other, the courts must decide on the question of each. So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution ; or conformably to the constitution, disregarding *452 the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty. If, then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply. Those, then, who controvert the principle that the constitution is to be construed, in court, as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the constitution, and see only the law.
“This doctrine would subvert the very foundation of all written constitutions. It would declare that an act which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory. It would declare that if the legislature shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality effectual. It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure. That it thus reduces to nothing what we have deemed the greatest improvement on political institutions, a written constitution, would of itself be sufficient, in America, where written constitutions have been viewed with so much reverence, for rejecting the construction.”
Those who are charged with the exercise of judicial power in a constitutional government cannot too often advert to Marbury v. Madison, 1 Cranch, 137. The foregoing extended quotation from the opinion of Chief Justice Marshall.in that case, is justified because of its demonstration that with respect to the ad *453 judication of questions of this character, that which is sometimes urged and regarded as mere compromise or concession is, in fact, a dereliction of duty. Since the soundness of that doctrine is universally admitted, its effect should not be evaded.

Judgments of the circuit court, and of the court of common pleas reversed, and cause remanded to the court of common jileas with direction to sustain the demurrer.

Burket, Spear, Davis and Price, JJ., concur.